THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ENRIQUE AGUILAR-VALENCIA,

        Defendant-Petitioner,

    v.

UNITED STATES OF AMERICA,

        Plaintiff-Respondent.

CASE NO. C18-0359-JCC

ORDER

This matter comes before the Court on Petitioner Enrique Aguilar-Valencia's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 1). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DISMISSES the motion for the reasons explained herein.

## I.    BACKGROUND

In 2015, Mr. Enrique Aguilar-Valencia was arrested and charged in connection with a substantial drug trafficking and money laundering operation. (Dkt. No. 12 at 9–10.) Mr. Aguilar-Valencia claimed that he was coerced into trafficking drugs by a violent Mexican drug cartel, and successfully moved the Court for permission to advance a duress defense if his case proceeded to trial. *United States v. Aguilar Valencia*, Case No. CR15-0202-JCC-1, Dkt. No. 202 at 1–2 (W.D. Wash. 2017). On November 23, 2016, Mr. Aguilar-Valencia pled guilty to one count of Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a),

841(b)(1)(A), and 846, and one count of Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1) and (h). (Dkt. No. 12-1 at 2–3.) As part of the plea agreement, the United States dismissed the remaining 15 counts of the indictment and agreed to recommend a sentence of no more than 13 years. (*Id.* at 10, 12–13.) Mr. Aguilar-Valencia signed the plea agreement, in which he acknowledged, among other things, that he was waiving the right to "persist in a plea of not guilty," and to "a speedy and public trial before a jury of his peers . . . [with] the effective assistance of counsel." (*Id.* at 6.) He further acknowledged that he entered the plea agreement "voluntarily, and that no threats or promises, other than the promises contained in [the plea agreement] were made to induce [him] to enter his pleas of guilty." (*Id.* at 16.)

At a change of plea hearing, Mr. Aguilar-Valencia stated under oath that he understood the rights he was waiving and that he had been promised nothing in exchange for his guilty plea other than what was contained in the plea agreement. (Dkt. No. 12-2 at 7–9, 11–12, 22–24.) Mr. Aguilar-Valencia also stated that he was satisfied with the representation he had received from his attorney, Peter Camiel. (*Id.* at 7.) This Court accepted Mr. Aguilar-Valencia's guilty plea, and on March 21, 2017 sentenced him to 12 years of imprisonment, with five years of supervised release to follow. CR15-0202-JCC-1, Dkt. Nos. 292, 316.

Mr. Aguilar-Valencia appealed his conviction and sentence. *Id.* at Dkt. No. 320. Mr. Aguilar-Valencia's appointed appellate counsel moved to withdraw, asserting that there were no meritorious issues for appeal. *United States v. Aguilar-Valencia*, Case No. 17-30054, Dkt. No. 8 (9th Cir. 2017). Mr. Aguilar-Valencia filed a supplemental brief objecting to his attorneys' failure to advance a duress defense, both before the district court and on appeal. *Id.* at Dkt. No. 18. The Court of Appeals granted the motion to withdraw and dismissed Mr. Aguilar-Valencia's appeal. CR15-0202-JCC-1, Dkt. No. 335.

Mr. Aguilar-Valencia now moves to vacate his sentence, alleging that Mr. Camiel's representation was ineffective in three ways. (Dkt. No. 1.) First, Mr. Aguilar-Valencia asserts that his attorney's "failure to proceed with [a] duress defense constituted ineffective assistance."

(*Id.* at 4.) Second, Mr. Aguilar-Valencia claims that he provided authorities with information regarding "individuals responsible for kid[]napping him and brutally murdering members of his family" in exchange for either a reduced sentence or release from custody under federal supervision to assist law enforcement pursuant to a cooperation agreement. (Dkt. Nos. 1 at 5, 18 at 3.) The alleged arrangement does not appear in the plea agreement, and Mr. Aguilar-Valencia claims that his attorney wrongly told him not to raise it at the change of plea hearing. (*Id.* at 3.) Third, Mr. Aguilar-Valencia asserts that his attorney did not advise him that pleading guilty would prevent him from proving his innocence. (Dkt. No. 1 at 7.) Mr. Aguilar-Valencia moves for an evidentiary hearing on all three claims, and also moves the Court to order the Government to comply with the cooperation agreement and reduce his sentence. (Dkt. No. 18 at 6–7.)

At the Government's request, Mr. Camiel submitted a sworn declaration regarding his representation. (Dkt. No. 14-1 at 2.) Mr. Camiel states that he investigated Mr. Aguilar-Valencia's proposed duress defense, but was unable to find evidence of the facts his client reported. (*Id.* at 5.) After Mr. Camiel advised him of the risks associated with advancing the duress defense at trial, he says Mr. Aguilar-Valencia "indicated his desire to try to avoid a trial and the risk of a 15 year mandatory minimum sentence."[1] (*Id.*) According to Mr. Camiel, "[Mr. Aguilar-Valencia] feared that a duress defense at trial would not be successful." (*Id.*) Mr. Camiel further stated that while he pursued a potential cooperation agreement, he never told Mr. Aguilar-Valencia that such an agreement had been reached, or that Mr. Aguilar-Valencia would be released from prison to cooperate with authorities. (*Id.* at 6.) Mr. Camiel asserts that he carefully reviewed the plea agreement with his client before Mr. Aguilar-Valencia signed it, that he answered Mr. Aguilar-Valencia's questions about it, and that Mr. Aguilar-Valencia pled guilty voluntarily and with knowledge of the consequences of doing so. (*Id.*)

---

[1] If Mr. Aguilar-Valencia was convicted on every count of the indictment—the majority of which were not included in the plea agreement—his sentence would be a mandatory *minimum* of 15 years in prison. (*See* Dkt. No. 12 at 21.)

## II. DISCUSSION

### A. Habeas Corpus Relief

A federal prisoner may petition to vacate their sentence because it was unconstitutionally or illegally imposed. 28 U.S.C. § 2255(a). The Court must order an evidentiary hearing on the petitioner's claims unless the record "conclusively shows that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In other words, the Court may summarily dismiss a petition when the allegations contained therein are "palpably incredible or [] patently frivolous." *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982). While the petitioner need not "detail his evidence" to justify a hearing, he must make "specific factual allegations which, if true, would entitle him to relief." *Id*.

### B. Ineffective Assistance of Counsel

Mr. Aguilar-Valencia claims that he received ineffective assistance from his attorney, both by his failure to advance a duress defense and by providing Mr. Aguilar-Valencia deficient advice regarding the content and effect of his guilty plea. A criminal defendant is constitutionally guaranteed the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove that he received ineffective assistance, Mr. Aguilar-Valencia must first show that his attorney provided an objectively unreasonable performance by pointing to specific acts or omissions that "were outside the wide range of professionally competent assistance." *Id.* at 690. He must also show that, but for his attorney's ineffectiveness, "the result of the proceeding would have been different." *Id.* at 694. The Court's scrutiny of Mr. Camiel's performance "must be highly deferential," and Mr. Aguilar-Valencia must overcome the "strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance." *Id.* at 689.

#### 1. Mr. Camiel's Failure to Advance a Duress Defense

Mr. Aguilar-Valencia's first ground for relief is that his attorney failed to "proceed with [a] duress defense." (Dkt. No. 1 at 4.) As previously discussed, in Mr. Aguilar-Valencia's

underlying criminal case the Court granted initial permission to advance such a defense at trial. CR15-0202-JCC-1, Dkt. No. 202 at 1–2. Mr. Camiel states that he investigated the factual basis for Mr. Aguilar-Valencia's claims underlying his proposed duress defense, that they discussed the low likelihood of success at trial, and that Mr. Aguilar-Valencia chose to plead guilty in part to avoid the risk and consequences of the defense failing at trial. (Dkt. No. 14-1 at 3–5.) Mr. Aguilar-Valencia does not contest the validity of Mr. Camiel's assertions, nor does he argue that Mr. Camiel's actions were deficient. Instead, he appears to simply argue that the failure to further pursue the duress defense constituted ineffective assistance of counsel. (Dkt. No. 1 at 4.)

Mr. Aguilar-Valencia's argument is foreclosed by his voluntary guilty plea. He twice acknowledged, in the plea agreement and in open court, that by pleading guilty he was voluntarily waiving the right to a trial where he could attempt to prove his duress defense. (Dkt. Nos. 12-1 at 6, 12-2 at 9.) Absent evidence that the petitioner was coerced, the Court will not invalidate a guilty plea where the record shows that the petitioner "ha[d] a full understanding of what the plea connote[d] and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). In reviewing a challenge to a guilty plea, the petitioner's statements under oath at a plea hearing are afforded a substantial presumption of validity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Mr. Aguilar-Valencia does not explicitly argue that his plea was involuntary or that did he not understand the rights he was waiving, nor would the record support that argument. *See id.*; *Boykin*, 395 U.S. 243–44. Therefore, just as Mr. Aguilar-Valencia cannot invalidate his guilty plea because he would now prefer to risk a duress defense at trial, he is not entitled to relief by asserting that his attorney's failure to assert the defense constituted ineffective assistance.

Moreover, Mr. Camiel's advice regarding the decision to plead guilty rather than proceed to trial on a duress defense appears entirely reasonable. In his sworn declaration, Mr. Camiel said that he investigated the possibility of a duress defense, but found little evidence to support it. (Dkt. No. 14-1 at 4.) Mr. Camiel states that he told his client that going to trial with a duress argument would open the door to evidence of Mr. Aguilar-Valencia's past criminal convictions,

as well as other damaging evidence. Finally, if Mr. Aguilar-Valencia were convicted, he would have faced a *minimum* sentence of 15 years—two more years than the Government promised to seek at sentencing and three more than he ultimately received. (*Id.* at 3.) Even if the Court construed Mr. Aguilar-Valencia's petition as asserting that Mr. Camiel's advice was ineffective on the duress issue, the record does not support any entitlement to relief.

Because the record conclusively shows that Mr. Aguilar-Valencia is not entitled to relief on the first ground of his petition, it is DISMISSED with prejudice.

### 2. Mr. Aguilar-Valencia's Alleged Cooperation Agreement

Mr. Aguilar-Valencia's second ground for relief is that Mr. Camiel incorrectly advised him about a cooperation agreement. (Dkt. No. 1 at 5.) Mr. Aguilar-Valencia states that he was promised the opportunity to assist law enforcement in ongoing investigations in exchange for either release from custody under federal supervision, or a reduction in his sentence pursuant to Federal Rule of Criminal Procedure 35(b). (Dkt. Nos. 1 at 5, 18 at 3.) But Mr. Aguilar-Valencia provides little to no detail about the alleged cooperation agreement—he provides the rough outline of its terms, but does not indicate when or by whom the offer was made, nor identify anyone who could corroborate its existence. (*See id.*) No mention of a cooperation arrangement appears in the plea agreement. (*See* Dkt. No. 12-1.) Nor was a potential cooperation agreement raised at the change of plea hearing, when Mr. Aguilar-Valencia testified that he had received no promises other than those contained in the plea agreement. (Dkt. No. 12-2 at 9.) Mr. Camiel states that while he explored the possibility of Mr. Aguilar-Valencia cooperating in exchange for a lesser sentence, he never reached an agreement with the Government and never told Mr. Aguilar-Valencia that he had. (Dkt. No. 14-1 at 5–6.)

Furthermore, nothing in the record supports Mr. Aguilar-Valencia's assertion that he was told to keep the terms of the claimed cooperation agreement secret. (Dkt. No. 18 at 5.) In the underlying criminal case, the Court sealed several documents filed by Mr. Aguilar-Valencia because they contained sensitive details, including information regarding his prior cooperation

with authorities. *See, e.g.,* CR15-0202-JCC-1, Dkt. No. 310 at 9–10 (sealed sentencing memorandum). Here, Mr. Aguilar-Valencia claims that the terms of the alleged cooperation agreement needed to remain confidential, but does not explain why the agreement was not simply filed under seal.

In *Blackledge v. Allison*, a prisoner provided sufficient evidence to justify an evidentiary hearing on his claim that he was promised, but not given, a reduced sentence if he pled guilty. 431 U.S. at 68–69. The prisoner claimed that he was assured by his attorney, and in the presence of a witness, that he would be sentenced to only 10 years if he pled guilty, but was in fact sentenced to nearly double that. *Id*. at 69. At the prisoner's change of plea hearing there was no mention of an agreed-upon sentence, and when he was asked if he had received any promises or threats that influenced him to plead guilty, he answered "no." *Id*. at 66. After sentencing, the prisoner moved to vacate his sentence. *Id.* His petition included detailed descriptions regarding "what the terms of the promise were; when, where, and by whom the promise had been made; and the identity of one witness to its communication." *Id*. The Court concluded that summary dismissal was unwarranted because the prisoner had made a sufficiently detailed factual assertion that, if true, would entitle him to relief. *Id*.

Unlike the prisoner in *Blackledge*, Mr. Aguilar-Valencia has not provided enough "specific factual allegations" about the claimed cooperation agreement to warrant an evidentiary hearing. *See also Baumann*, 692 F.2d at 571. He has only provided the rough outline of the agreement, which has itself changed considerably between his two briefs: In his petition, Mr. Aguilar-Valencia asserts that he was offered "release[] . . . under surveillance [to] further help authorities," while in his reply he claims that the offer was for a "reduction in his sentence of 18-months." (Dkt. Nos. 1 at 5, 18 at 3.) Beyond that discrepancy, Mr. Aguilar-Valencia provides no facts that suggest a cooperation agreement existed. He does not indicate from whom he received the offer, when or in what way it was communicated to him, or if there are any witnesses who could corroborate his account. And Mr. Camiel, the only party presently capable of confirming

Mr. Aguilar-Valencia's version of events, denies that such an arrangement ever existed. (Dkt. No. 14-1 at 5–6.) Moreover, the signed plea agreement and Mr. Aguilar-Valencia's statement at the change of plea hearing both contradict the existence of a cooperation agreement.

In the absence of such details, the Court is unable to find Mr. Aguilar-Valencia's allegation credible. Mr. Aguilar-Valencia has failed to meet his burden of providing "*specific* factual allegations" to support his claim. *Baumann*, 692 F.2d at 571. While Mr. Aguilar-Valencia was not required to "detail his evidence," the Court will not order an evidentiary hearing because he failed to indicate what his evidence would be. *Id.* Therefore, ground two of the petition is DISMISSED with prejudice.

### 3. Mr. Aguilar-Valencia's Inability to Prove His Innocence

Finally, Mr. Aguilar-Valencia asserts that his attorney never advised him that by pleading guilty he was waiving the right to prove his innocence. (Dkt. No. 1 at 7.) Mr. Aguilar-Valencia claims that Mr. Camiel told him "that the plea-agreement was a cover-up to protect him and his family," and that following "proceedings" against those responsible for violence against Mr. Aguilar-Valencia and his family, his conviction would "become void." (*Id.*) Mr. Camiel states that he never had any such discussion with Mr. Aguilar-Valencia. (Dkt. No. 14-1 at 6.)

Insofar as the Court construes Mr. Aguilar-Valencia's allegation to be that Mr. Camiel failed to advise him of the legal effect of pleading guilty—in other words, that he would not later be permitted to prove his innocence—such a claim is directly contradicted by the record. Mr. Camiel states that he carefully reviewed the plea agreement with Mr. Aguilar-Valencia, which clearly states that by pleading guilty, he waived the right to contest the charges against him at trial. (Dkt. Nos. 12-1 at 6, 14-1 at 6.) Mr. Aguilar-Valencia also testified at his change of plea hearing that he understood that he was waiving this right by pleading guilty. (Dkt. No. 12-2 at 9.)

Insofar as Mr. Aguilar-Valencia's claim is construed to allege that Mr. Camiel advised his client to plead guilty as a "cover-up" while authorities pursued criminal charges against other people, that assertion has absolutely no support in the record. (Dkt. No 1 at 7.) Accordingly, the

Court finds Mr. Aguilar-Valencia's third ground for relief plainly frivolous and DISMISSES it with prejudice and without an evidentiary hearing.

### C. Certificate of Appealability

When issuing a final order denying relief under 28 U.S.C. § 2255, the Court must determine if a certificate of appealability should issue. 28 U.S.C. § 2253. To grant a certificate of appealability, the petitioner must make "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The Supreme Court has clarified that a petitioner makes such a showing when "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Mr. Aguilar-Valencia has not made that showing. Two of his claims—that Mr. Camiel failed to further pursue a duress defense or advise him that pleading guilty would prevent him from proving his innocence—are plainly contradicted by the record. Mr. Aguilar-Valencia's remaining claim, that he was promised the chance to cooperate with authorities but never got the benefit of that bargain, similarly finds no support in the record other than his own self-serving, uncorroborated, and unsupported declaration. On this record, no reasonable jurist could find that Mr. Aguilar-Valencia's conclusory and unsupported allegations would entitle him to relief.

## III. CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 1) is DISMISSED with prejudice. Mr. Aguilar-Valencia's request for an evidentiary hearing and a certificate of appealability are DENIED.

DATED this 30th day of October 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE